UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

       Plaintiff,

    v.                                                                       Case No. 09-CR-245

SANTIAGO RIOS,

       Defendant.

---

### DECISION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDATION (DOC. # 28), ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATION ON DEFENDANT'S PRETRIAL MOTIONS (DOC. # 27), AND DENYING DEFENDANT'S MOTIONS TO SUPPRESS STATEMENTS AND EVIDENCE (DOCS. # 8, 9)

The defendant, Santiago Rios, is charged with possession of ammunition after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). On November 11, 2009, Rios filed a motion to suppress statements and a motion to suppress evidence. An evidentiary hearing on the defendant's motions was conducted by Magistrate Judge William Callahan on November 18, 2009, followed by additional briefing. Judge Callahan issued his written decision on February 12, 2009, recommending that this court deny both of the defendant's motions and the defendant timely filed objections to them.

For unknown reasons, the government did not respond to the defendant's objections. Inasmuch as the government has failed to respond to the objections within the time permitted, the objections are considered unopposed.[1]

---

[1] Not only is the government's counsel aware that the defendant filed an objection to the Recommendation, but this court notified all parties that it was adjourning the final pretrial conference and trial dates to permit full briefing on the pending objections. The government's failure to show any interest in the pending objections is troubling, and will be addressed at the next hearing.

DISCUSSION

On dispositive matters, including motions to suppress evidence, a magistrate judge may only propose findings and make recommendations. Fed. R. Crim. P. 59(b)(1). A district court must review de novo the recommendations of the magistrate judge to which a party timely objects. Fed. R. Crim. P. 59(b)(2), (3).

Rios's motions and objections concern the execution of a no-knock warrant issued for the "upper unit" of 1656 Dr. Martin Luther King Drive in Racine, Wisconsin, on July 29, 2009. He contends that the entry into his apartment was without a valid warrant, without consent, and without exigent circumstances. Thus, according to Rios, any evidence seized from the premises must be suppressed due to violations of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Further, he asserts that any statements he made while in custody on July 29, 2009, must be suppressed due to violations of his rights under the Fifth and Fourteenth Amendments.

For background, law enforcement obtained a no-knock warrant for the "upper unit" of 1656 Dr. Martin Luther King Drive based on information provided by a confidential informant ("CI"). The warrant described the location as a "two story, multi unit dwelling, commercial lower and residential upper." Further, the warrant noted that the Southeast facing door was labeled "1656 UP" and that law enforcement will enter this door in executing the warrant.

In executing the warrant, twelve SWAT team members broke through the door marked "1656 UP" with a battering ram and proceeded up the stairs. At the top of the stairs, the team used the battering ram on another door and threw a diversionary device into the hallway. Once in the hallway, officers were surprised to find two doors identified (in

what appears from the photographs to be black marker)[2] as "Apt # 1" and "aPT # 2." There was also a bathroom off of the common hallway. Taking a guess based on information from the CI, the team broke down the door of "Apt # 1."

Rios was located in "aPT # 2," however, and upon realizing that they entered the wrong apartment, SWAT Officer David Derks knocked on the second door. Rebecca Dunkerly-Rios, Rios's wife, answered the door. Officer Derks confirmed that Rios was in the apartment, entered the apartment, and placed him under arrest. Other officers secured the premises. Rios's brother Jose Rios and Jose's girlfriend Melissa Rodriguez were called to pick up Rios's children. Officer Kevin Kupper then left the scene to obtain a second search warrant for "1656 Dr. Martin Luther King Drive rear upper unit # 2." Officer Kupper testified that he returned to the scene about an hour or two later with the second warrant. After the second warrant arrived, Sergeant Todd Schulz, the supervisory officer on the scene, read Rios is *Miranda* rights.

I. Motion to Suppress Evidence

Rios moved to suppress evidence on several interrelated grounds: the first warrant was invalid because it omitted reference to two apartments in the upper unit; the officers entered and searched his apartment without a valid warrant and without consent; and the second warrant was invalid and incapable of saving the search. Judge Callahan rejected each argument.

In his objections to the Recommendation, Rios takes issue with each of Judge Callahan's conclusions. First, Rios asserts that Judge Callahan erred in concluding that the first warrant was valid when obtained and executed. Rios submits that the officers should have known well before entering the building that the upper unit included two apartments

---

[2] *See* Evidentiary Hearing Exhibits 1 and 2.

because two doorbells are visible from the outside and two mailboxes are located inside the screen door.

Upon review of the record, the court agrees with Judge Callahan that the warrant was valid. The CI stated that Rios was dealing drugs from the "upper unit" of 1656 Dr. Martin Luther King Drive. Following the evidentiary hearing, Judge Callahan determined that the exterior of the building does not indicate that there are two units on the second floor. Indeed, a review of the photographic exhibits introduced during the evidentiary hearing supports this conclusion.[3] Further, investigatory efforts by police, including the acquisition of information from the utility company, surveillance of the building, talking with officers familiar with the building, and gaining assurance from the CI, were reasonable and supported the belief that the upper unit was a single residence. *See Maryland v. Garrison*, 480 U.S. 79, 87 (1987) ("[W]e must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant.")

Judge Callahan noted, however, that under *Garrison*, 480 U.S. at 87, police are to discontinue a search upon discovering that there are multiple units on the floor. (Rec. 8.) And, as Judge Callahan observed, it is undisputed that at some point before entering Rios's apartment, the officers realized the "upper unit" consisted of more than one

---

[3] *See* Evidentiary Hearing Exhibits 103, 104, 106, 107. The photographs show a door on the side of a rectangular brick building. The outer portion is a black screen door clearly labeled "1656 UP" in block letters and numbers. Outside of the screen door is a small white doorbell box and a small white plate, which may have been part of a doorbell box. In the few inches between the screen door and a main door, two black mailboxes are attached to the wall on opposite sides.

apartment.[4] Consequently, the officers then knocked on Rios's door, confirmed his presence, and entered his apartment.

Nonetheless, Rios maintains that the officers violated his rights by entering his apartment without a valid warrant and without consent.[5] Rejecting this argument, Judge Callahan concluded that once the first warrant was found to be defective, exigent circumstances justified the officers' entry into Rios's apartment. In reaching this conclusion, Judge Callahan cites the destructible nature of controlled substances (which Rios's was alleged to be distributing from the apartment), and the noise created by law enforcement in entering the building.

Rios does not dispute that the officers created a commotion in battering down doors and initiating a diversionary device in the common hallway. However, he points out that Officer Derks knocked on Rios's door, as opposed to knocking it down, and observed Rios in his boxer shorts, after the door was opened. Under these circumstances, according to Rios, there was no reasonable danger to the officers or indication that evidence would be destroyed. (Obj. 4.) He further asserts that the officers impermissibly created any exigent circumstances, which cannot justify a warrantless entry.

The court, however, agrees with Judge Callahan that exigent circumstances justified the initial entry and security sweep of Rios's apartment. *See United States v.*

---

[4] It is unclear when this became known. Officer Derks testified that they believed they were in the wrong apartment when he encountered the African-American tenant of "Apt 1." Officers knew Rios to be Hispanic.

[5] The record indicates that the officers stopped their search of Apartment #1 once it became clear that it was not Rios's residence. And, it may be argued that despite the erroneous listing of the upper unit as one residence, police still maintained a valid warrant for the search of the upper unit controlled by Rios. Along these lines, the government argued to Judge Callahan that the CI was simply mistaken about the address ("upper unit" instead of "upper unit # 2") and that such a technical error does not necessarily invalidate the warrant. Judge Callahan did not follow this line of reasoning, and the government failed to respond to Rios's objections.

*Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006) ("The relevant focus is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured." (citing *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998)). Officers reasonably believed that there were drugs in Rios's residence (illustrated by the no-knock warrant previously obtained), and the noise created by the officers' entry into the building was substantial—Rios testified that he heard "a loud flash, bang, boom" along with people yelling "police, police, police." His argument that the officers' impermissibly created exigent circumstances to enter the building fails because, as discussed earlier, it was reasonable for the officers to believe that Rios occupied the entire upper unit. On this point, Judge Callahan discussed the relevant case law, and correctly distinguished cases such as *United States v. Munoz-Guerra*, 788 F.2d 295 (5th Cir. 1986), on which Rios relies for support.

The question then moves to the search and seizure of items from Rios's apartment and the validity of the second search warrant. Testimony conflicted as to the exact time that the officers initiated the search of Rios's apartment. Sergeant Schulz testified that once the SWAT team secured the residence, the officers refrained from any search until the second search warrant arrived. In contrast, Melissa Rodriguez and Jose Rios testified that they observed officers searching the common bathroom. Dunkerly-Rios testified that while officers were securing the apartment, she heard papers fall from her desk and saw officers look through her garbage. She also testified that once the second search warrant arrived, officers searched throughout the apartment. However, Judge Callahan concluded that Rios had no expectation of privacy with regard to the bathroom, and that it was not apparent that the officers seized any evidence prior to obtaining the second search warrant. Moreover, even if officers seized evidence prior to obtaining the second warrant,

the evidence would be admissible under the inevitable discovery doctrine. *See Nix v. Williams*, 467 U.S. 431, 444 (1984).

Rio submits that the second warrant cannot sustain the search and seizure because it was invalid when issued. Specifically, he asserts that "the second warrant contained materially incorrect facts that Officer Kupper knew were wrong upon the execution of the first warrant." (Def.'s Br. in Supp. 12.) Further, he contends that the affidavit in support of the second warrant reiterated information provided by the CI that should be discounted because the CI erroneously stated that Rios occupied the "upper unit." The reference to the "upper unit" is included in several paragraphs of the warrant affidavit, and therefore, according to Rios, the issuing judge was "misled" into finding that probable cause existed. (Obj. 7.)

However, contrary to Rios's assertion, the record does not indicate that the issuing judge was misled by information that the affiant knew to be false, or that specific reference to the CI's error in the supporting affidavit would negate a finding of probable cause. Among other matters discussed by Judge Callahan, the affidavit reflected that the CI's information was based on personal observation and included details about the CI's interactions with Rios. The affidavit also indicated that police attempted to corroborate information about Rios's residence through surveillance and other means. Though the affidavit referred to the "upper unit," a new paragraph clarified that the officers discovered that the upper unit consisted of two apartments and that Rios was located in apartment 2.

Examining the totality of the circumstances, the court finds no grounds for concluding the second warrant was invalid. *See United States v. Koerth,* 312 F.3d 862, 866 (7th Cir. 2002) (noting that the court "must examine the totality of the circumstances to determine whether the affidavit on its face established probable cause," including factors

- 7 -
Case 2:09-cr-00245-CNC   Filed 04/15/10   Page 7 of 9   Document 29

such as police corroboration of a CI's statements, whether the CI has firsthand knowledge of the events described, the amount of detail provided, and the time between the events and the application for the warrant).

Inasmuch as the second warrant was valid when issued and executed, all evidence obtained pursuant to that warrant is admissible. Further, as discussed by Judge Callahan, efforts to obtain a second search warrant were underway shortly after the officers realized that the initial warrant was defective. Thus, any evidence that may have been seized prior to the arrival of the second warrant is admissible under the inevitable discovery doctrine. *See e.g., Nix,* 467 U.S. at 444 (1984); *United States v. Sims*, 553 F.3d 580, 584 (7th Cir. 2009) (noting that justification for the exception exists where, "despite the illegal search, the values protected by Fourth Amendment are not harmed because the consequences for the defendant would have been exactly the same as they were"); *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (indicating that for the doctrine to apply, "the government must prove by a preponderance of the evidence that authorities would have found the challenged evidence through lawful means" (internal quotation marks omitted)); *United States v. Stefonek*, 179 F.3d 1030 (7th Cir.1999).

II. Motion to Suppress Statements

Rios filed a motion to suppress any statements he made while being detained on July 29, 2009, claiming that he was questioned by Sergeant Shultz prior to having been read his *Miranda* rights. The record indicates that Rios was detained after officers entered his apartment, and that he was read *Miranda* rights after Officer Kupper returned with the second warrant.

At the evidentiary hearing, Sergeant Schulz testified that Rios was not subject to custodial interrogation before being read his *Miranda* rights, which occurred shortly after

- 8 -
Case 2:09-cr-00245-CNC    Filed 04/15/10    Page 8 of 9    Document 29

the second warrant arrived on the scene. In contrast, Rios and Dunkerly-Rios testified that officers questioned Rios prior to the arrival of the second warrant. After considering this testimony, Judge Callahan found Sergeant Schulz's testimony more credible than the testimony of Rios and Dunkerly-Rios. Therefore, he concluded that Rios was not interrogated prior to administration of his *Miranda* rights and that there was no basis for suppression.

In his objections, Rios simply argues that Judge Callahan failed to adequately discuss why he discounted Rios and Dunkerly-Rios's testimony. Upon review of the record, the court finds that Judge Callahan's credibility determination was not clearly erroneous and that there are no grounds for upsetting his ruling. Therefore,

IT IS ORDERED that the defendant's objections to the Magistrate Judge's Recommendation (Doc. # 28) are overruled.

IT IS FURTHER ORDERED that the Magistrate Judge's Recommendation on the Defendant's Pretrial Motions (Doc. # 27) is adopted.

IT IS FURTHER ORDERED that the defendant's motion to suppress statements (Doc. # 8) is denied.

IT IS FURTHER ORDERED that the defendant motion to suppress evidence (Doc. # 9) is denied.

Dated at Milwaukee, Wisconsin, this 15th day of April, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE